May it please the Court again, Mohamed Hammoudi. On behalf of Mr. Marshall, I'd like to reserve three minutes of my time for rebuttal. I'm going to go back to speak about larger principles briefly and then speak about briefly what occurred in this case. Going back to Morrissett v. the United States, when Justice Jackson talks about the contention that an injury can amount to a crime only when inflicted by intention, there's no provincial or transient notion. Recently, not too long ago this year in Rwanda, the Court affirmed that in a 9-0 ruling that consciousness of wrongdoing is about the belief in the freedom of human will, about the ability and duty of the individual to choose between good and evil. This principle requires that criminal statutes be interpreted to require a defendant to possess a culpable state of mind. But here, he knew he'd been convicted twice before. Yes. So it's, when we're talking about strict liability, this is an instance where someone has to have been convicted twice before and presumably they know the consequence. I think that reasoning, Your Honor, would strike true for felon and possession cases. And rehafe really requires individuals to, individually within the concept of notice, understand that their conduct in this case crossed a line, differentiated between innocent and evil conduct. But otherwise, you could say that somebody has multiple felon and possession of firearm cases and say, you knew you were a felon, therefore we're going to hold you strictly liable. And that certainly would not survive a prosecution. Congress, though, wrote the statute in that way. Because it wasn't, that's the situation in rehafe. It was the statute was written differently. I think where we're going to push back there, Your Honor, is that we believe that the statute is silent. And to sort of dig in and go into the case a little bit, there are two statutory provisions. There's Title 21, Section 331A. It says, the introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco, product, or cosmetic that is adulterated or misbranded. Then we go to Title 21, Section 333A.2 states in relevant part, if any person commits such a violation after conviction of him under this section has become filed, which Your Honor just spoke to, or commits such violation with the intent to defraud or mislead, such person shall be imprisoned for not more than three years. That first statutory provision is silent. But in the second, Congress expressly put in a mens rea. So the government argues, well, Congress expressly put in the mens rea in the second prong and omitted it in the first prong, which is a recidivism prong. And so we should infer that Congress did not intend to have a mens rea for the first prong. Why doesn't that argument work? That argument doesn't work because the, just because Congress includes it in one provision but not the other provision, it does not necessarily mean that Congress intended mens rea not to apply to that provision. And in the context of Rahave, court said a mens rea not only other statutory terms that separate wrongful from innocent acts. So I want to go back. Now we have A1. A1 is actually the provision that was at issue in the Supreme Court in Dodderwike, if I'm not mistaken. Yes. And so we know from Dodderwike that it doesn't have a scienter requirement. Is that? Yes. Right. So, but then you go to two and then it says if any person commits such a violation meaning A1, which we know has no scienter, after a conviction of him under this section has become final or commits it with scienter. So that such sort of links you back to a provision that we've been told by the Supreme Court doesn't have scienter. So we start with such conviction, no scienter, and then one of two elements, one of which is scienter. That creates a really powerful sort of argument that the other option doesn't add the scienter because we started with no scienter and we linked to that. And then we said one of two things, one of which is scienter and one of which is you're here for a second time. I think if you, if there's a close call, Your Honor, you would presume a scienter. And, and the reason why we say that is because Watkins talks about that Congress intended that the felony provisions of this statute require a scienter. But I want to go back to section 331A, which the court talked about, which is that aspect that says the introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product or cosmetic that is adulterated or misbranded. Now in 2011, and this is supplemental excerpts record 84, the government interpreted that to be the alleged, that defendant knowingly caused the introduction into interstate commerce of certain drugs. They presumed a mens rea. In 2017, the government at supplemental excerpts record 112 said the defendant knowingly caused the introduction into interstate commerce of certain drugs, presumed a mens rea. In 2020, in the complaint, and they again said that he knowingly and intentionally introduced, delivered and caused the introduction delivery of, of drugs, misbranded drugs. So what am I saying here? What I'm saying is here that the government here is interpreting that provision. 331A with a presumption of a mens rea. 333A2 talks about a separate finding of an intent, which is an intent to defraud or mislead. Now you have to know that the object that you are shipping in interstate commerce is in fact the object that it is. Is it a drug? Is it a food? Is it the provisions? Is it a tobacco product or a cosmetic? It doesn't say dietary supplement. That's not what it says. And so I think where the problem becomes is that now you're left in this no man's land. Well, how are we supposed to hold somebody accountable for shipping a dietary supplement across state lines, even if they have 10 of these prior convictions? Well, you have to look at the nature of the prior convictions. And that goes back to the issue of notice. And the prior convictions actually involved registered drugs, HCG. And these products, there is no dispute that these products were dietary supplements. There's no dispute that these products were registered as foods by the government itself. And companies that were registered as food companies. So you have a situation where the government is publicly announcing to the public that this is a food, that this is a dietary supplement. Yet, if you so happen, if you so happen to have prior convictions under 331 and 333A, then you're on the hook on strict liability. And to reach that conclusion, we would have to take Doderwich and we would have to interpret it, which would say beyond what we believe Doderwich intended to reach. We don't think that Doderwich in this broad scopes of giving the government a right broadly to regulate this part of the industry was speaking to these situations. It was talking about harmful products. Products that put the individual at actual risk. And nothing about these items in and of themselves objectively indicates to the public that they are harmful products. And in fact, there was no testimony that they were harmful products. The only harm that was identified, the only harm that was identified was this abstract harm. That in the event an individual would take these products, they would then alternatively avoid conventional health care. And doing so would place them then at risk. No such evidence was ever produced that this occurred in this case. And it sort of is this paternalistic view. We can't have a blanket regulation of drugs. We have to have in applying this statute a case by case assessment whether this particular drug was one that, you know, has a potential for injury. I mean, because I don't read Doderwich and its interpretation of this provision that way. It just seemed to say the whole class is one that is potentially injurious if you don't have the right instructions for it, etc. It's got to be heavily regulated when people use things in this area. And so we don't have to look at whether or not this one actually is more harmless than others. This is an aspirin and this is fentanyl. But even misdemeanor possession of marijuana at a federal park requires that an individual know they're in possession of a controlled substance. Even a misdemeanor possession of marijuana knowingly. What they're saying is that against the backdrop of this regulatory scheme, that he does not need to know that he's dealing with a drug or a dietary supplement. And reading into the statute a presumption of mens rea, I think, avoids a ton of constant – But the kind of minimum rationale for mens rea in Staples when it summarizes Doderwich and the public welfare offense case law is this notion that you're dealing with a either potentially harmful, injurious, dangerous device where the defendant should be alerted to the probability of strict regulation. And we have assumed in such cases that Congress intended to place the burden on the defendant to ascertain at his peril whether his conduct comes within the inhibition of the statute. Why isn't that satisfied by the recidivist provision here? Because if you've been through an FDA act prosecution already once before, you are by definition then alerted to the possibility of regulation here and that sort of minimum condition for dispensing with scienter under Staples is met. I appreciate the court's observation, but I would say that you're subject to regulation. What type? Criminal prosecution or Title 21, Section 332, an injunction or a seizure of the products. There are certainly alternative mechanisms in the statute to respond. He knows he's criminal because his prior one was criminal, not civil. Because it involved an actual drug, which I think dovetails naturally to the issue of notice. And I have a question about that, which is related. So it wasn't clear to me about whether you had actually brought a claim before the district court or had preserved a claim that the statutory definition of drug was void for vagueness. When I looked in your briefing, you only reference a statement at the second trial at ER 2157 that he also, that Marshall also maintains his vagueness objection, but I couldn't find anything in the record where you had raised a vagueness objection. And then the briefing gestured vaguely to an overarching Fifth Amendment objection, but I didn't see anything on the cited page. So I wanted to know whether, as the government argues, this challenge, void for vagueness challenge to the statutory definition of drug is waived or not. We don't, we believe that the broader arching Fifth Amendment objection and the appropriate comments about vagueness placed the government on notice that the statute was being challenged as well as, as well as, as applied to Mr. Marshall. And did you make any specific challenge to the statute that I could look at? We said that the court's definition of, of drug was, was vague, that this instruction was vague, that any article intended to cure, mitigate, or prevent disease. We attempted to provide the full definition of the term drug to which the district judge then, Sue Sponte said. I know that's a separate claim to that. Other than that, Your Honor, we, we've, we have repeatedly, we've, we maintain that the overarching Fifth Amendment objection preserved our challenge to the statute. That's our position. And our position is, is there's a facial challenge to a statute that, that do not involve First Amendment violations. They must be examined as applied to the defendant. So if the court does not believe that, that this is a First Amendment objection, a false First Amendment protected activity, then it would just automatically trigger, trigger to an as applied challenge to the vagueness of the statute. Okay, you're running out of time. Did you want to save some? Thank you. Good morning, Your Honors. Jonas Lerman for the United States. The defense has tried hard in this case to make it seem complicated. And it's really not. This was a straightforward prosecution under a statute that's been on the books for 80 plus years of a de-licensed ex-naturopath who, as the court has noted, has been prosecuted twice before under the statute. Here, he introduced misbranded drugs into interstate commerce for a third time. And as the jury found, he misbranded this Dynamic Duo product in two different ways. And the defense is not challenging those misbranding findings on appeal. First, the jury found that Mr. Marshall's labeling was materially misleading because he falsely claimed to be a naturopathic doctor when he's not. He's been stripped of that title. He's been barred from holding himself out as a naturopath. Second, and independently, the jury found that the Dynamic Duo wasn't produced in a two separate theories of misbranding that the jury found. On appeal, really, all the arguments center around the statute's definition of drug. All five of the claims really are about that. But the FDCA's definition of drug is broad by design. The Supreme Court said so in U.S. v. Article of Drug. Congress fully intended that the act's coverage be as broad as its literal language indicates. This court in Kaplan said the FDCA is to be interpreted broadly in order to protect public health. Watkins, the FDCA, is a public welfare statute that imposes the highest standard of care on distributors. And Mr. Marshall's conduct falls squarely within the statute. He promoted and sold this Dynamic Duo product as a drug. He described it in his promotions as a treatment and a cure for not just COVID-19, but MRSA and lots of other ailments. And because he sold these products as drugs, it makes sense for the FDCA to regulate them as drugs. Mr. Marshall is precisely the type of... And that standard's an objective one, correct? Correct. It's the objective intended use of those products. That's correct. But to the extent, in this case, you're relying on his documentation. Correct. Right. So I find it actually somewhat circular in that you're saying it's a drug because of his documentation. And then because of his documentation, therefore, it's a drug that wasn't registered, so it's misbranded. That was one of the theories of misbranding. And then, as I said, the second was a material misrepresentation about his qualifications. That's only if it's a drug in the first place. Right. And it's a drug based on its intended use. And the way that the government proved intended use here is consistent with how the government proves intended use generally, because what a distributor of a substance says about the substance is, in many cases, going to be the best evidence of how the public's going to interpret the intended use of that product. So the district court, on the mens rea claim, the district court correctly concluded that each essential element of these statutes, 331A and 333A2, was in the indictment. And it was not required to allege a separate mens rea element. And all the tools of statutory interpretation point in that direction. Judge Ikuda and Judge Collins, you've already, I think, zeroed in on the statutory text. And you're exactly right. The statutory text is clear on this question. But even if it weren't, you know, if we look to Congress's understanding of the meaning of these terms, we have unusually clear history here, you know, more than a century's worth, where there have been proposals introduced to add a scienter element to these statutes and Congress has repeatedly declined to add them. But even sort of more as a threshold point, this court and the Supreme Court have already said that the FDCA is a public welfare offense. And so the normal presumption of scienter just doesn't apply here. But Staples comes really close. I know it holds back at the very end, but comes really close to saying that the public welfare exception to the presumption of scienter only applies if the penalty is small. And here the penalty is not small. And so I'm not sure that we can just sort of say public welfare scienter presumption out the window. Understood, Your Honor. Staples did say that the maximum penalty is a factor to determine when assessing whether Congress intended to eliminate a mens rea element. And there, you know, there was a suggestion that 10 years may be the outer limit. The court in excitement video described 10 years as a harsh penalty. In Rehaef, that also involved a 10-year maximum penalty. Rehaef also, the Supreme Court said, did not involve a public welfare offense, though. So it's a factor to consider, certainly. But again, the evidence we have here of whether Congress intended to eliminate mens rea for offenders like Mr. Marshall, the evidence is very clear. I would also point the court towards this court's decision in Weizenhoff, which describes the continuing validity of the public welfare exception. And in footnote 7 of Weizenhoff, it collects cases involving public welfare offenses where the maximum penalties were between 2 and 10 years. And so, for example, one of the cases cited there is Freed, a Supreme Court case involving possession of unregistered hand grenades. And I believe the maximum penalty there was 5 years. The Supreme Court has, and this court, have both declined to draw any kind of bright line, beyond which a public welfare offense must include a scienter element because the penalties are so severe. But if 10 years is the outer limit, we're far from that here. The maximum penalty here is 3 years in prison and a $10,000 fine. And the defense hasn't cited any case where a court has accepted their argument in a public welfare context in a case involving 3 years. The closest they come is the Wolf decision from the Sixth Circuit in 1985. That was a case about the Migratory Birds Treaty Act. But that case is distinguishable for a host of reasons. This court and the Supreme Court, for one thing, have not adopted the reasoning of the Sixth Circuit. The Sixth Circuit said in that case that omission of scienter in that migratory bird statute was, quote, quite likely due to oversight by Congress. So we have a very different history here. And the year after the Wolf opinion came out, Congress actually added a scienter element to that act. And so, again, we have very different legislative history here. And finally, Wolf didn't involve the prior conviction element, which Judge Fitzwater raised. So it's a very different statutory scheme than we have here. This is really quintessential public welfare offense. And 3 years is far from the outer limit that courts have identified. Could you address the argument that the question of the definition of drug being void for vagueness, whether that was preserved by the Fifth Amendment objection generally? That was not preserved. As we say in our brief, that was clearly waived, because he moved to dismiss the indictment as vague before trial. We responded that he appeared to be challenging the FDCA's definition of drug itself. And he replied, no, no, no. And this is at SCR 458. Mr. Marshall is not challenging the statute, but rather the indictment. When a party says, I'm not challenging the statute in the district court, and then challenges the statute on appeal, that's a quintessential waiver here. So making some generalized Fifth Amendment claim is not sufficient, especially because he made Fifth Amendment arguments in other contexts as well. But the standard of review doesn't actually matter here. I mean, we do think it was waived. If it wasn't waived, it's reviewable at most for plain error. But under any standard, the claim fails because the FDCA's definition of drug is not vague. It's broad, certainly. But again, that's by design. It is not vague. So does it cover everything that is ingestible, that where there's a health claim attached? Because I don't see how it wouldn't cover my oatmeal saying it may lower cholesterol. So the definition of drug is in, there are four definitions in 321 G1. The theory that the government proceeded on here was in G1B. The term drug means articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or animals. But proving that something is a drug because of its objective intended use is only one thing that the government has to prove here, of course. We also have to prove that it was misbranded in some way. But it's misbranded as soon as it's not registered. So that seems, again, circular. So you don't really have to prove anything in addition. If you prove that my oatmeal, which claims you should eat it every day to lower your cholesterol, is for mitigation treatment of cholesterol, then it's not registered with the FDA. So it's the case. So my oatmeal is a drug that's misbranded. So Quaker Oats is liable. Well, I'm not familiar with Quaker Oats making that specific claim. But again, the government has to prove under this statute that it's a drug, that it's misbranded, that it's introduced into interstate commerce. And we already have clear case law, Doderwich, Watkins, and otherwise, that the misdemeanor version of that offense is strict liability. The defense has conceded that it's strict liability on page 40 of their opening brief. So all we're talking about here is the felony enhancement provision. But again, that felony enhancement provision, and maybe this is going back a little bit to the mens rea claim, that felony enhancement provision does not separate criminal conduct from innocent conduct. And on that point, I'd point the court to the decision last year, this court's decision last year in Woodbury, which the defense cites in their reply brief. This court said that the mens rea presumption does not apply to elements that do not separate innocent from wrongful conduct. And that was a case about the short barrel firearm enhancement in 924C, which raises the mandatory minimum penalty. And this court said that there's no need to show, the government doesn't need to show that a defendant knew the length of the barrel of his gun for the enhancement to apply. The same thing's true here. The prior conviction prong serves to enhance the potential penalty here. So it's an element the government had to prove, but it's not an element that separates innocent from wrongful conduct. But back to vagueness, you know, we start, first of all, we have to start, the analysis has to start with the analysis as applied to Mr. Marshall. And that's clear from the case law. If the statute's not vague as applied to him, these hypothetical examples about, you know, oatmeal or grandma sending matzo ball soup and so forth, they don't apply because if the statute's not applied to him, he can't rely on hypotheticals. And the statute is certainly not applied to Mr. Marshall because he, again, undoubtedly promoted and sold the dynamic duo as a drug, as a treatment for drug addiction. And he repeatedly and expressly described it in that way. And then, of course, he also has the two prior convictions. I would also note that his, the way he described the dynamic duo, he often used terms that mirror the terms of the FDCA itself, which, again, shows his knowledge, not that we had to prove his knowledge, but shows his knowledge of the definition of drug. We've collected a bunch of examples of that in our answering brief. Another example is that he included on his disclaimer, on his website, a disclaimer that mirrored the FDCA text exactly. He said, these statements have not been evaluated by the FDA. This product is not intended to diagnose, treat, cure, or prevent any disease. That's at ER 1243. Now, that disclaimer didn't appear on his Facebook posts or in the materials that actually accompanied the pills that he sold to his customers. But the disclaimer, again, shows that he actually did have knowledge about this definition. And finally, on the vagueness point, this court said in Vasaras, V-A-S-A-R-A-J-S, that a statute's not void for vagueness if, at the very least, it suggests the need to seek legal advice and if the statute's meaning might reasonably be determined through such advice. Can I ask you a question before your time runs out about the First Amendment? Because the intended use, we've already agreed, is an objective standard, and yet you invoke the Mitchell case on the First Amendment, which says that, you know, you can use the defendant's speech to establish subjective intent. Is there a gap there because it's subjective intent in Mitchell and here it's objective intent, or does that make any difference? No, it doesn't make any difference. So, in Wisconsin v. Mitchell, the Supreme Court said that the First Amendment does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent. Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like. And here, Mr. Marshall's speech was introduced, it was relevant on several elements that we had to prove. So, how did he introduce the dynamic duo into interstate commerce? Well, he did it through his advertisements, through his communications with customers. You know, how were the substances misbranded? Again, one of the ways the jury found he misbranded them was by misrepresenting his own qualifications. And then also, yes, how was this substance a drug? What was its objective intended use? The defense has not cited any case where any courts accepted a First Amendment theory like theirs or, you know, drawn the subjective objective distinction that they draw. But even, I think, before you get to that, it's important to remember that this is a case about commercial speech. So, we're in the land, you know, the zone of Central Hudson, and Central Hudson said that misleading commercial speech receives no First Amendment protection. And again, the jury found here that, you know, Mr. Marshall's representations were misleading. So, since this is commercial speech, you know, you don't even have to reach the Wisconsin versus Mitchell question. I'm just about out of time. You are out of time. Oh, I am out of time. If the court has no other questions, we'd ask that you affirm. Thank you. I do want to address Judge Collins' observation about notice. He's done it before a couple of times, therefore, he knows the laws. Having done something before doesn't necessarily put you on notice unless the facts are the same. And what happened in the past doesn't put him on notice as to what he's saying about dietary supplements and the limits on what he can say or what he cannot say. Now, he did ask the judge to give a full definition of the term drug to the jury, which allows him, Congress allows him to make some claims with respect to dietary supplements. So, that's the distinction I want to address there. I think Judge Collins is also correct about speaking to the Wolf Doctrine in that when you're looking at the Staples was sort of alluding to this, that the Wolf Doctrine does apply here. It allows the court to draw a distinction between felony and misdemeanor conduct so that there's a limiting principle on the interpretation of the statute. And Wolf, as we have cited, has been friends in the 6th, 8th, 1st, 5th, and 10th circuits. They all in some form or another acknowledge or abide by that doctrine. So, we think that that doctrine applies to avoid the constitutional issues that are presented. As to Your Honor Quakeroat, the question is not Quakeroat making the claim, it's you making the claim. You as a person making a claim about a product. Now, if you look at this statute, 21 U.S.C. 331G, the manufacturer within any territory of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded. So, if you manufactured Quakeroats inside of your kitchen and you're making claims about them that would render them a drug and you're fated to violate the statute, we do not think that Congress intended this statute to be interpreted in this way. It's an absurd interpretation of the statute. We want to avoid that interpretation. It's too literal. It's too literal. And if we're going to interpret the statute literally, the statute speaks to the intent to cure, mitigate, or prevent disease in man or animal. Okay? If we want to be a literal interpretation of the statute, then it excludes women and the undercover agent was a woman. You're over time. Thank you, Your Honor. The case of United States v. Richard Marshall is submitted and we are adjourned for this session.
judges: IKUTA, COLLINS, Fitzwater